THE STATE OF OHIO, APPELLANT, *v.* COWAN, APPELLEE.

[Cite as *State v. Cowan,* 103 Ohio St.3d 144, 2004-Ohio-4777.]

(No. 2003–1406—Submitted March 30, 2004—Decided September 22, 2004.)

FRANCIS E. SWEENEY, SR., J.

{¶ 1} On the night of October 1, 2001, a Portage County deputy dog-warden was summoned to the home of Margaret and Jeffrey Maurer to investigate a dog bite incident. At the home, the deputy dog warden spoke with Jeffrey Maurer. Mr. Maurer told the deputy that two dogs, belonging to his neighbor, Janice Cowan, defendant-appellee, had attacked his wife. After talking with Mr. Maurer, the deputy dog warden made the determination that appellee's dogs were vicious. The deputy dog warden then went to appellee's home to inform appellee of this determination and to advise appellee of her responsibilities according to the law. Appellee was notified that she must confine her dogs in a certain manner and was given paperwork explaining her legal responsibilities. Appellee refused to sign the paperwork.

{¶ 2} After this incident, the dog warden's office was summoned two more times to appellee's residence in response to complaints that her dogs were roaming the neighborhood. The first time, the deputy warden found the dogs tethered to a tree in a manner that was not in compliance with the vicious-dog law, which requires confinement in a locked, fenced yard or in a pen with a top. The deputy handed appellee a copy of the law and advised her to follow it. The second time, the deputy warden investigated and found the dogs chained to a stake in the ground, a form of restraint that does not comply with the vicious-dog law. After discussing the case with his superior, the deputy warden filed charges against appellee.

{¶ 3} Appellee was subsequently charged with two counts of failing to confine a vicious dog, violations of R.C. 955.22(D)(1), misdemeanors of the first degree; one count of failing to obtain the required liability insurance for a vicious dog, a violation of R.C. 955.22(E), a misdemeanor of the first degree; and one count of failing to restrain a dangerous dog, a violation of R.C. 955.22(D)(2)(b), a misdemeanor of the fourth degree. Prior to her trial, appellee filed a motion to dismiss the charges on the grounds that R.C. 955.22 was void for vagueness and further that the statute violated her due process rights. The motion was overruled and the case proceeded to trial.

{¶ 4} At trial, appellee renewed her motion to dismiss. Again, it was denied. The jury convicted her of all charges. The trial court fined appellee $750 plus costs and sentenced her to 365 days in jail. The court suspended $250 of the fine

and 360 days of the sentence on certain conditions, including a requirement that appellee surrender her dogs[1] and that she not own another dog for one year.

{¶ 5} The court of appeals reversed her convictions, finding that R.C. 955.22 unconstitutionally deprived appellee of her due process rights. Specifically, the appellate court found that appellee had been denied due process because she had no opportunity to be heard prior to her property rights being substantially and adversely affected. The court found that, according to R.C. 955.22, the dog warden had unfettered discretion to label appellee's dogs as dangerous and/or vicious. Further, there was no mechanism for appealing that determination.

{¶ 6} This cause is now before this court upon the acceptance of a discretionary appeal.

{¶ 7} At issue in this case is whether R.C. 955.22 violates procedural due process. It is well settled that an enactment of the General Assembly is entitled to a strong presumption of constitutionality. *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 458, 668 N.E.2d 457. Therefore, challenged legislation will not be invalidated unless the challenger establishes the unconstitutional nature of the statute beyond a reasonable doubt. Id. We apply these principles to this case.

{¶ 8} Although the concept is flexible, at its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right.[2] *Boddie v. Connecticut* (1971), 401 U.S. 371, 377, 91 S.Ct. 780, 28 L.Ed.2d 113. Further, the opportunity to be heard must occur at a meaningful time and in a meaningful manner. *Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18; *Hochhausler*, 76 Ohio St.3d at 459, 668 N.E.2d 457. The right to procedural due process is conferred not by legislative grace, but by constitutional guarantee. Thus, while the legislature may elect not to confer a particular property right, it may not constitutionally authorize the deprivation of a property interest, once conferred, without appropriate procedural safeguards. *Arnett v. Kennedy* (1974), 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (Powell, J., concurring in part).

{¶ 9} It is undisputed that citizens enjoy the right to own dogs, and in *State v. Anderson* (1991), 57 Ohio St.3d 168, 566 N.E.2d 1224, we recognized the special relationship that often exists between owners and dogs. We remarked that "[t]o many, a pet dog is as important and as loved as * * * human members of the

---

1. Although only two of appellee's dogs were implicated in the biting incident, all three of her dogs were seized and, according to appellant, ultimately destroyed.

2. The right to procedural due process is found in the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, 773 N.E.2d 502, ¶ 6.

family." Id. at 170, 566 N.E.2d 1224. Thus, most dog owners consider their pet to be more than a mere thing, and the ownership of it constitutes a valuable right. Regardless, however, of the possibility of strong sentimental attachment, a dog is still property. Therefore, dogs are subject to the state's police power. The state may use its power to regulate or destroy dogs in order to protect its citizenry. Id.

{¶ 10} One way for the state to regulate dogs is found in R.C. 955.22.[3] R.C. 955.22(D)(1) requires owners of a dangerous or vicious dog, as defined in R.C. 955.11(A)(1)(a) and (A)(4)(a), to confine the dog in a certain manner. R.C. 955.22(E) requires the owner of a vicious dog to obtain a certain amount of liability insurance. Any owner who fails to comply with these requirements is guilty of a misdemeanor of the first or fourth degree. R.C. 955.99(F) and (G)(2).

{¶ 11} According to appellee, R.C. 955.22 violates procedural due process as there is no opportunity for a defendant to be heard with respect to the labeling of a dog as either vicious or dangerous. Here, appellee asserts that the deputy dog warden made her determination based upon the unsupported word of the complaining parties that her dogs, without provocation, attacked Mrs. Maurer. Appellee asserts that she was not given the chance to present contrary evidence before substantial regulatory burdens were imposed on her property.

---

3. {¶ a} R.C. 955.22 provides:

{¶ b} "(A) As used in this section, 'dangerous dog' and 'vicious dog' have the same meanings as in section 955.11 of the Revised Code.

{¶ c} "* * *

{¶ d} "(D) Except when a dangerous or vicious dog is lawfully engaged in hunting or training for the purpose of hunting and is accompanied by the owner, * * * no owner * * * of a dangerous or vicious dog shall fail to do either of the following:

{¶ e} "(1) While that dog is on the premises of the owner, * * * securely confine it all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained;

{¶ f} "* * *

{¶ g} "(E) No owner * * * of a vicious dog shall fail to obtain liability insurance * * * providing coverage in each occurrence * * * of not less than one hundred thousand dollars because of damage or bodily injury to or death of a person caused by the vicious dog."

{¶ h} R.C. 955.11(A)(1)(a) defines "dangerous dog" as "a dog that, without provocation, * * * has chased or approached in either a menacing fashion or an apparent attitude of attack, or has attempted to bite or otherwise endanger any person, while that dog is off the premises of its owner * * * and not under the reasonable control of its owner * * * or not physically restrained or confined in a locked pen which has a top, locked fenced yard, or other locked enclosure which has a top."

{¶ i} R.C. 955.11(A)(4)(a) defines "vicious dog" as "a dog that, without provocation * * *, meets any of the following:

{¶ j} "(i) Has killed or caused serious injury to any person;

{¶ k} "(ii) Has caused injury, other than killing or serious injury, to any person, or has killed another dog."

{¶ 12} However, appellant argues that R.C. 955.22 is constitutional because appellee was afforded the right to challenge her dogs' classification at her criminal trial. Appellee responds that the ability to challenge this label at a later criminal trial does not offer her a meaningful opportunity to be heard before her property rights have been infringed by official state action. We agree with appellee.

{¶ 13} Once the dog warden made the unilateral decision to classify appellee's dogs as vicious, R.C. 955.22 was put into effect and restrictions were placed upon appellee and her dogs. No safeguards, such as a right to appeal or an administrative hearing, were triggered by this determination to challenge the viciousness label or its ramifications. In fact, it was not until appellee was formally charged as a criminal defendant that she could conceivably challenge the viciousness designation under R.C. 955.22. We find it inherently unfair that a dog owner must defy the statutory regulations and become a criminal defendant, thereby risking going to jail and losing her property, in order to challenge a dog warden's unilateral decision to classify her property. The statute does not provide appellee a right to be heard in a meaningful time and in a meaningful manner on the issue of whether her dogs were vicious or dangerous. Accordingly, we find that R.C. 955.22 violates procedural due process insofar as it fails to provide dog owners a meaningful opportunity to be heard on the issue of whether a dog is "vicious" or "dangerous" as defined in R.C. 955.11(A)(1)(a) and (A)(4)(a).

{¶ 14} Even assuming that R.C. 955.22 provides a meaningful opportunity to be heard on a dog's classification, it is certainly unconstitutional as applied here. Although appellant now argues that one aspect of its case at trial was to establish that the dogs were vicious and dangerous, a reading of the transcript reveals that the state did not believe that it had this burden. It is true that the state presented evidence at trial from the victim and an eyewitness relating the dog-bite incident and identifying the dogs as belonging to appellee. However, the state also presented testimony from the deputy warden that the determination that these dogs were vicious had already been made prior to trial. Moreover, the state repeatedly told the jury that the warden had already determined that the dogs were vicious and it was not the jury's job to decide whether it is fair for the dog warden to make this determination. Thus, although the jury was given the definition of a "vicious" or "dangerous" dog, this element of the crime was removed from their consideration.

{¶ 15} Previously, this court has stated that "[d]ue process of law implies, in its most comprehensive sense, the right of the person affected thereby to be present before the tribunal which pronounces judgment upon a question of life, liberty or property, to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right

in the matter involved. If any question of fact or liability be conclusively presumed against him, such is not due process of law." *Williams v. Dollison* (1980), 62 Ohio St.2d 297, 299, 16 O.O.3d 350, 405 N.E.2d 714. So even assuming that the statute provides a constitutionally adequate opportunity to be heard on this issue, appellee was not afforded this right.

{¶ 16} Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., dissents with opinion.

O'CONNOR, J., dissents.

O'DONNELL, J., dissents with opinion.

---

**MOYER, C.J., dissenting.**

{¶ 17} I respectfully dissent. We should not be surprised if today's decision is remembered as the case where—to paraphrase Justice Holmes[4]—dead dogs made bad law. Despite the common belief that a dog is man's best friend, the facts of this case demonstrate that there is an exception to every rule.

{¶ 18} In declaring R.C. 955.22 unconstitutional, the majority leaves Ohio with statutory definitions of "dangerous dog" and "vicious dog," R.C. 955.11(A)(1)(a) and (A)(4)(a), but no requirements for confining such dogs and no requirement that an owner of a dangerous or vicious dog obtain insurance against liability for injury caused by such a dog. The majority does so despite the clear mandate of the General Assembly imposing those requirements.

{¶ 19} We should clarify precisely what R.C. 955.22 requires. It imposes duties on the owners of dangerous or vicious dogs in order to protect people from being harmed by such dogs. Those owners must restrain their animals in a statutorily prescribed manner and procure liability insurance for the damage they might cause. See R.C. 955.22(D) and (E). These duties are imposed *by the statute itself,* irrespective of the determinations of a dog warden or other law enforcement official.

{¶ 20} R.C. 955.22 does not vest a dog warden with authority to conclusively label any particular animal as vicious or dangerous. Notably, R.C. 955.22 does not even mention dog wardens or any other law enforcement official. Nor does it establish any procedural framework, let alone an unconstitutional one. As noted

---

4. *N. Securities Co. v. United States* (1904), 193 U.S. 197, 400, 24 S.Ct. 436, 48 L.Ed. 679 (Holmes, J., dissenting) ("Great cases, like hard cases, make bad law").

by the dissenting judge in the court of appeals, the proceedings below did not constitute "an administrative action; rather, it was a criminal prosecution * * * [and] the only notice required was the complaint or the indictment."

{¶ 21} When accused of failing to meet the duties imposed by R.C. 955.22, a dog owner is provided procedural due process by virtue of the fact that a conviction of violation of the statute is dependent upon the accused being afforded all the procedural protections surrounding any criminal misdemeanor prosecution. The deputy dog warden here responded to the complaint of a citizen, whose testimony at trial was believed by a jury, that Cowan's dogs had attacked her. At that point the deputy dog warden did nothing more than advise Cowan of the statutory duties imposed by the General Assembly upon owners of vicious or dangerous dogs and the deputy dog warden's own conclusion that she was such an owner. The deputy dog warden did not force Cowan to purchase liability insurance. The deputy dog warden did not remove the dogs from Cowan's possession.

{¶ 22} It was only after Cowan failed to heed the warnings of the deputy dog warden, and the dogs were found only loosely restrained on more than one subsequent occasion, that the dog warden filed misdemeanor charges of violating R.C. 955.22. A jury in the Portage County Municipal Court found her guilty; Cowan failed to post bond and only at that point were the dogs taken from her and destroyed. Procedural due process was fully satisfied.

{¶ 23} R.C. 955.22 is not unconstitutional either on its face or as applied.

### Facial Unconstitutionality

{¶ 24} The majority holds that R.C. 955.22 violates the constitutional right to procedural due process because it fails to provide dog owners a meaningful opportunity to be heard on the issue whether a dog is vicious or dangerous. It thus appears to hold R.C. 955.22 unconstitutional on its face.

{¶ 25} The majority holds that the owner of a dangerous or vicious dog has a right to some form of administrative procedure before a dog warden may warn— much less charge—an owner that the warden considers the owner's dog to be vicious and thus subject to R.C. 955.22, even where the warden has investigated a complaint that the dog has attacked a person, causing serious injury. In so holding, the majority seems to set a new standard for procedural due process in Ohio.

{¶ 26} The syllabus implies that a dog owner is under no duty to comply with R.C. 955.22 unless and until a law enforcement officer determines the dog to be vicious. This is simply no different from saying that a person traveling 50 m.p.h. in a 25–m.p.h. speed zone is not violating the speeding laws unless and until a law enforcement officer advises the person that his or her conduct conflicts with the

law.  Clearly the officer's conclusion that the driver was speeding does not entitle the driver to some sort of administrative hearing before the officer may file a speeding charge against the driver.

{¶ 27} The majority strays from the appropriate analysis in accepting the premise that "[o]nce the dog warden made the unilateral decision to classify appellee's dogs as vicious, R.C. 955.22 was put into effect and restrictions were placed upon appellee and her dogs."  R.C. 955.22 does not, however, impose a requirement that a warden classify a dog in order to trigger the duties of that statute.  The warden did not "classify" the animals so as to accomplish any change in the duties the law imposed on Cowan.  No new legal consequences flowed from the deputy dog warden's determination that Cowan's dogs were vicious or dangerous.

{¶ 28} It is true that Cowan's dogs were added to a registry maintained in the dog warden's office of dogs that office considered vicious.  However, identifying Cowan's dogs in that registry did not subject Cowan to any statutory requirement not already imposed directly by R.C. 955.22.  Adding those dogs to the registry was simply a clerical procedure employed by the dog warden.  The majority's conclusion that it is unconstitutional for a county dog warden to add specific dogs to an internal record of dogs considered by the office to be vicious without first holding an administrative hearing places the priority of concern with the dog owner rather than with the safety of persons with whom a dangerous dog may have contact.

{¶ 29} The majority confuses administrative adjudications with the internal discretionary procedures and decisionmaking of law enforcement officials as to the filing, and the timing of filing, of criminal charges.  The deputy dog warden in this case, who was a certified peace officer, did not *adjudicate* Cowan's dogs to be vicious; rather, she advised Cowan that, in her opinion, and based on her interview of the husband of the neighbor who was bitten,[5] Cowan's dogs were vicious.  She then informed Cowan of her belief that Cowan was subject to the vicious-dog law, including the requirement that vicious dogs be restrained in the

---

5.   {¶ a} The neighbor described the October 1, 2001 incident at trial as follows:

{¶ b} "I walked out through the garage and [Cowan's dogs] were coming towards me, and I shouted at them and waved and told them to go home, and they kept coming.

{¶ c} "* * *

{¶ d} "* * * They came across the grass from the Cowan's property to our driveway, and they just kept coming and I became frightened and turned around to get ready to run and they jumped me from behind and one of them grabbed my arm and the other one grabbed my leg, and I swung around on my left leg to throw them off and [my husband] came out of the garage at the same time with a log and—a couple logs he got there and started throwing them at them, and I was able to get away and go into the house."

manner described in R.C. 955.22.[6]   Upon concluding that Cowan was the owner of vicious dogs and had not adequately restrained them, the deputy dog warden chose to educate and warn Cowan at that time rather than immediately prosecute her.

{¶ 30} Would the majority view this case differently if the deputy dog warden had observed the dog bite a neighbor, or been bitten herself?   Would the majority then find it unconstitutional for the deputy dog warden to inform Cowan, without first holding an administrative hearing, that she was required by law to keep that dog restrained and carry liability insurance, and that if the dogs were thereafter found running loose she would be criminally charged?   Is not an investigating officer entrusted with determining the credibility of complainants, without holding a formal adversarial hearing, before arriving at the conclusion that a person's conduct is not lawful?

{¶ 31} The majority states that it is unfair for a dog owner to be put in a position where he or she "risk[s] going to jail and losing her property, in order to challenge" a dog warden's decision that the dog is vicious.   However, every person informed by a law enforcement official that he or she must alter conduct because it is not in conformance with the law or risk prosecution is faced with that situation.   That is the nature of every law-enforcement warning.   In every criminal prosecution some person initially determines that the accused has violated a statute or an ordinance and makes a charge in accord with that determination.   Surely the majority does not mean to imply that a citizen is entitled to an administrative hearing before a law enforcement officer may issue warnings and advise changes in conduct.   The unintended consequences of such a holding would wreak havoc in the administration of criminal justice.

{¶ 32} For example, assume a book seller is deemed by law enforcement officers to be unlawfully selling obscene materials.   That book owner has a choice: he must either eliminate the materials deemed obscene from his inventory—thereby affecting his property rights—or risk having to defend in court his contention that the materials are not obscene.

---

6.   {¶ a} The deputy dog warden testified as follows:

{¶ b} "Q.   When you attempted to contact Ms. Cowan [after investigating the October 1, 2001 dog-bite complaint] what were you going to discuss with her?

{¶ c} "A.   Well, she needed to be advised of [the] quarantine [imposed by R.C. 955.261], double-check that the dogs were confined, check to see if the dogs had rabies shots, advised of the vicious dog law.

{¶ d} "* * *

{¶ e} "Q.   * * * And based upon your investigation that evening, have Ms. Cowan's dogs done something to qualify as a vicious dog?

{¶ f} "A.   Yes.

{¶ g} "Q.   And what specifically had they done?

{¶ h} "A.   Seriously injured a person."

{¶ 33} Similarly, a motorist stopped for driving a vehicle equipped with a damaged muffler might be issued an immediate citation or simply warned by the officer that the law requires her to have a fully operable muffler. Whether the officer merely gives a warning or actually cites the driver at that time is largely a matter of the officer's discretion. If the officer exercises that discretion in favor of issuing a warning, it would not be constitutionally suspect for that officer to share with his fellow officers the fact of his contact with that owner and to advise fellow officers to be on the watch for the vehicle to see if the owner has complied with the law without the necessity of initiating formal criminal proceedings. Certainly, the officer would not be required to provide the motorist with an administrative hearing prior to "classifying" her as the driver of a statutorily noncompliant vehicle and informing her of the requirement of the law—even if the driver thereafter must expend her financial resources to repair or replace the muffler to avoid the risk of prosecution.

{¶ 34} The majority finds that "appellee ha[s] been denied due process because she had no opportunity to be heard prior to her property rights being substantially and adversely affected." It is not clear to what property rights the majority refers. If the majority means that the dog owner was required to buy liability insurance after the warden advised her to, then the argument fails because the duty to obtain insurance flows directly from the statute. If an owner's dogs are vicious—a factual matter—then that owner must have insurance not because a dog warden deems the dogs to be vicious, but because the statute mandates it.

{¶ 35} If the deprivation of property referred to by the majority is the seizure and ultimate destruction of appellee's dogs, then the majority ignores the facts of the case: the seizure of the dogs occurred *after* a jury determined that appellee's dogs did indeed injure her neighbor and appellee failed to pay the bond required by the trial court to obtain a stay of its seizure order.[7] Clearly Cowan was provided procedural due process before her animals were destroyed.

---

7. {¶ a} After the jury returned a guilty verdict, the court included in its sentencing order the following:

{¶ b} "Defendant's dogs are to be surrendered to the Portage County Dog Warden immediately. The Dog Warden is given the authority to place the animals with an appropriate owner, not in Portage County, or if necessary, the Portage County Dog Warden is granted the authority to destroy the Defendant's dogs. The Portage County Dog Warden must retain the animals at the Portage County Dog Shelter for at least thirty (30) days. The Dog Warden, after thirty (30) days has lapsed, may allow the dogs to be adopted by an appropriate out of county owner, or if absolutely necessary, may authorize the destruction of the animals."

{¶ c} The court of appeals stayed this part of the sentence pending appeal contingent upon the payment of $840 per month, but ordering that "[i]f appellant fails to make a timely payment as to any particular month, the Portage County Dog Warden shall be allowed to dispose of the three dogs in the manner stated in the trial court's judgment."

### Unconstitutionality As Applied

{¶ 36} I also dissent from the majority's conclusion that the statute was unconstitutional as applied to the dog owner in the case before us. I agree with the majority that it was the state's burden at trial to prove that Cowan had violated every element of the charges under R.C. 955.22, including the burden of proving that Cowan's animals fell within the statutory definition of a vicious or dangerous dog. Clearly, a trial court would err in instructing a jury that it is bound by the factual determination of a dog warden that any particular dog is vicious or dangerous, as defined in the statute. That determination is a matter to be determined by the factfinder.

{¶ 37} However, in the case at bar it is simply untrue, as stated by the majority, that "although the jury was given the definition of a 'vicious' or 'dangerous' dog, this element of the crime was removed from their consideration." The jury was *not* instructed that the dog warden's determination that Cowan's dogs were vicious or dangerous was conclusive. To the contrary, the jury was given the statutory definitions of "dangerous dog" and "vicious dog" and instructed that "[b]efore you can find the Defendant guilty, you must find beyond a reasonable doubt that * * * the Defendant was the owner, keeper, or harborer of a dangerous or vicious dog."

{¶ 38} The majority contends that the prosecutor on occasion improperly told the jury that it was not its job to decide whether Cowan's dogs were, in fact, vicious or dangerous. Review of the record discloses that the prosecutor did state that the deputy dog warden had concluded that those dogs were vicious and at times implied that violation of the statute was dependent upon a warden's determination to that effect. Although this implication is legally incorrect, the prosecutor's statements were not challenged by objection, and any error inherent in these statements was waived.

{¶ 39} The record further discloses that during the state's opening argument, the prosecutor told the jury that it would ultimately be called upon to "make a decision * * * whether or not this was a dangerous dog * * * [or] a vicious dog." Similarly, the prosecutor acknowledged in closing argument that although the deputy dog warden had declared the dogs vicious, the jury could itself decide "which testimony to believe and which testimony * * * to disbelieve" and argued at length the evidence presented at trial concerning incidents involving the dogs, in an attempt to convince the jury that the dogs were indeed vicious. That statement is no different from a prosecutor advising a jury that it may choose whether to believe an arresting officer or a person accused of speeding.

{¶ 40} In addition, defense counsel expressly argued at length the factual issue of the viciousness of Cowan's dogs during closing argument, introducing those comments by stating, "What we have, Ladies and Gentlemen, is Janice Cowan

telling you her dogs are not vicious. What has the State shown you to prove that they are?"

{¶ 41} In the course of investigating the complaint in this case that one of Cowan's dogs had bitten a neighbor, the deputy dog warden informed Cowan that she considered Cowan's dogs to be vicious and of the statutory requirements that the owner of a vicious dog must meet. Instead of filing a complaint asserting a violation of R.C. 955.22 at that time, which the deputy dog warden could have done, she instead gave Cowan a warning and another chance to comply with the law before initiating criminal proceedings. That action was no different from a law enforcement officer advising a motorist that the driver's automobile is unsafe, on the assumption that the motorist will correct the condition, thereby bringing the auto into compliance with law. Indeed, when called back to the neighborhood on a subsequent occasion, the law enforcement official gave Cowan a second chance before finally filing criminal charges after a third complaint about the dogs. I know of no due process right to protection from receiving a warning.

{¶ 42} Cowan, however, held an opinion contrary to that of the deputy dog warden as to whether her dogs fell within the statutory definitions of "dangerous dog" and "vicious dog" and concluded that the requirements of the vicious-dog statute did not apply to her. She chose to take a chance that the jury would believe her and not the person who was attacked as to whether the dogs were in fact vicious. The jury believed the victim and the deputy dog warden and found Cowan guilty of violating R.C. 955.22. Then and only then was Cowan deprived of her property rights to the dogs.

{¶ 43} R.C. 955.22 is neither unconstitutional on its face nor as applied. The judgment of the court of appeals should be reversed.

O'CONNOR, J., concurs in the foregoing dissenting opinion.

---

**O'DONNELL, J., dissenting.**

{¶ 44} I respectfully dissent. The uncontroverted facts here reveal that Janice Cowan appealed from a judgment of the Portage County Municipal Court entered pursuant to a jury verdict finding her guilty of two counts of failing to confine a vicious dog, one count of failing to confine a dangerous dog, and one count of failing to obtain the liability insurance required by R.C. 955.22(E). These charges arose from three separate incidents from October 2001 through January 2002.

{¶ 45} The appellate court determined that Cowan had been denied due process of law, based on the fact that Cowan had no opportunity to challenge Deputy Portage County Dog Warden Cheryl Heckman's conclusion that Cowan owned vicious dogs. However, Deputy Heckman conducted an investigation of

the October 2001 attack on Margaret Maurer, which had resulted in multiple bites on her arm and leg, required hospital treatment, and caused permanent scarring. Heckman concluded that Cowan's dogs had perpetrated the attack on Maurer and had seriously injured her, and therefore, in accordance with R.C. 955.11, determined her dogs to be vicious.[8]

{¶ 46} Deputy Dog Warden Jason Williard subsequently investigated charges that the dogs were running loose on January 18, 2002 and filed a charge against Cowan because he determined that the dogs had not been properly confined on that date.[9] Essentially, the appellate court concluded that Cowan had no administrative process to appeal Heckman's conclusion.

{¶ 47} In my view, however, the criminal charges that formed the basis of this case are unaffected by any classification by Heckman.

{¶ 48} The burden of the prosecution never changed. It had the obligation to prove guilt beyond a reasonable doubt. And Cowan had the ability to present as a defense the fact that the dogs were not vicious, or had been properly confined, or that no need existed to confine them.

{¶ 49} R.C. 955.11(A)(1)(a) defines a dangerous dog, and R.C. 955.11(A)(4)(a) defines a vicious dog. Cowan's guilt was only known following trial. No unilateral dog-warden classification resulted in destruction of her animals; that occurred only after the jury had reached its verdict and the court imposed sentence. And nothing prevented Cowan from seeking a temporary order or other stay of any determination of the dog warden pending trial; nothing in law prevents any dog owners from challenging any classification by dog wardens. The fact is that the General Assembly has defined a vicious dog as one that kills or injures persons. A dog is dangerous or vicious if the prosecution proves beyond a reasonable doubt that the dog meets those definitions as specified in R.C. 955.11. Here, Cowan had a full opportunity at trial to contest charges that she owned vicious dogs. And prior to trial, she had the opportunity to contest allegations regarding the confinement of her animals had she chosen to do so. She did not.

---

8. {¶ a} Pursuant to R.C. 955.11(A)(4)(a), a "vicious dog" is one that "without provocation and subject to division (A)(4)(b) of this section, meets any of the following:
    {¶ b} "(i) Has killed or caused serious injury to any person;
    {¶ c} "(ii) Has caused injury, other than killing or serious injury, to any person, or has killed another dog.
    {¶ d} "(iii) Belongs to a breed that is commonly known as a pit bull dog. The ownership, keeping, or harboring of such a breed of dog shall be prima-facie evidence of the ownership, keeping, or harboring of a vicious dog."

9. R.C. 955.22(D) provides that the owner of a vicious dog must securely confine it all times.

{¶ 50} Accordingly, in my view, Cowan had a meaningful opportunity to contest the evidence that her dogs seriously injured Margaret Maurer on October 1, 2001, and had the same due process rights accorded to any other defendant. In other instances of criminal prosecution, the state removes defendants from society pending trial, seizes the evidence from a crime scene—often the home of a defendant—pursuant to a warrant pending trial, and even removes children pending trial, and otherwise takes actions designed to preserve evidence and maintain safety and security in society pending outcomes of trials.

{¶ 51} Requiring these dogs to be secured pending trial is not a denial of due process, but rather a reasonable measure designed to maintain neighborhood safety pending trial. Accordingly, I would reverse the judgment of the appellate court.

O'CONNOR, J., concurs in the foregoing dissenting opinion.

————————

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela J. Holder, Assistant Prosecuting Attorney, for appellant.

Mentzer, Vuillemin & Mygrant, Ltd., and Erik M. Jones, for appellee.