NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-5159

THE STATE OF OHIO, APPELLANT, *v.* JONES, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Jones,* Slip Opinion No. 2019-Ohio-5159.]

*Criminal law—Dogs—R.C. 955.22—Sufficiency of the evidence—Prior dangerous-dog designation not required before person may be prosecuted for failing to control or confine a dangerous dog—Prosecution may prove dog's dangerousness at trial—State failed to present sufficient evidence that dog was dangerous—Court of appeals' judgment vacating conviction affirmed.*

(No. 2018-0601—Submitted May 8, 2019—Decided December 17, 2019.)

CERTIFIED by the Court of Appeals for Hamilton County,

No. C-160908, 2018-Ohio-565.

_____

STEWART, J.

{¶ 1} In this certified-conflict case, we decide whether the "dangerous dog" element of R.C. 955.22's dangerous-dog laws requires that the dog in question have

been previously designated as "dangerous," as defined by R.C. 955.11(A)(1)(a), pursuant to the procedures set forth in R.C. 955.222 before the state may prosecute a person for violating R.C. 955.22(D). Here, the First District Court of Appeals concluded that a prior designation as a dangerous dog is a prerequisite to its owner being prosecuted for failing to confine a dangerous dog in violation of R.C. 955.22(D). 2018-Ohio-565, 95 N.E.3d 440. In contrast, the Fifth District Court of Appeals has determined that the state may establish the dangerous-dog element by proving that the dog is "dangerous" without offering proof of any previous designation. *State v. Crocker*, 5th Dist. Coshocton No. 2012 CA 0021, 2013-Ohio-3100. The Fifth District held that the state may prove "dangerousness" as an element of the offense at trial, without the dog in question having been previously designated as dangerous through some other process. Further, it held that the acts of the dog qualifying it as "dangerous" pursuant to R.C. 955.11(A)(1)(a) may have occurred simultaneously with the events giving rise to the R.C. 955.22 dangerous-dog prosecution. *See id*. at ¶ 14, 31-32.

{¶ 2} We recognized that a conflict exists and accepted the state's appeal on the following question of law: "Must a dog have been previously designated as a 'dangerous dog' under Chapter 955 of the Ohio Revised Code before its owner may be prosecuted for a violation of R.C. 955.22?" 153 Ohio St.3d 1428, 2018-Ohio-2418, 100 N.E.3d 445. We hold that a prior designation of dangerousness pursuant to R.C. 955.222 or otherwise is not a prerequisite to prosecution for failing to abide by R.C. 955.22's dangerous-dog laws. Instead, where the state has probable cause to believe the dog in question is dangerous, based on prior actions of the dog that meet the definition contained in R.C. 955.11(A)(1)(a), the state may initiate prosecution and prove the dog's dangerousness at trial along with the other elements of the offense.

{¶ 3} In the present case, however, we find that the state failed to present sufficient evidence that the dog in question was in fact "dangerous." Accordingly,

2

we answer the certified-conflict question in the negative but affirm the judgment of the First District Court of Appeals for reasons that are different from those announced in its opinion.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 4} Appellee, Joseph Jones, was walking his dog near his Cincinnati apartment when he unleashed the dog to allow it to protect him from an approaching stray dog. Jones's dog and the stray interacted without incident. As Jones was walking back to his apartment, the two dogs proceeded toward a woman, Alyssa Rushing, who had just exited the building with her dog. According to Jones, he then re-leashed his dog and the stray attacked Rushing's dog. Rushing, however, claimed that Jones's dog bit her on the wrist and hand, pulling her to the ground, while the stray dog attacked her dog. Jones assisted in separating his dog from Rushing and also in freeing her dog from the stray. Both Rushing and her dog sustained bite wounds.

{¶ 5} The state charged Jones with failing to confine a dangerous dog, in violation of R.C. 955.22(D), a fourth-degree misdemeanor, which, among other things, prohibits an owner of a dangerous dog from removing the dog's leash while in public. The case was heard in the Hamilton County Municipal Court, where Jones was eventually tried and convicted. The court sentenced him to a 30-day jail term, suspended on the condition that he successfully complete six months of nonreporting probation and pay a $100 fine and court costs.

{¶ 6} On direct appeal, Jones argued that the state failed to present sufficient evidence to sustain a conviction for failure to confine a dangerous dog because his dog had never been designated as a dangerous dog prior to the state charging him with the offense. According to Jones, the dangerous-dog element of the offense is established only through proof of a separate prior legal action that results in a dog being designated a "dangerous dog" by the government. He explained that the government can secure a prior formal designation by following the procedures

outlined in R.C. 955.222—a related statute that provides a civil notice and hearing process for designating dogs as dangerous when there is reason to believe that the dog meets the definition of "dangerous dog" contained in R.C. 955.11(A)(1)(a). Jones argued that R.C. 955.22's dangerous-dog laws do not apply to a person unless that person's dog has previously been designated "dangerous" by the government in accordance with the process set forth in R.C. 955.222 or alternatively, by a judge at an earlier proceeding for failure to confine that dog.

{¶ 7} The state countered that the dangerous-dog element of the offense does not require a dog to have been previously designated as dangerous pursuant to R.C. 955.222 or any other judicial proceeding. The state maintained that the element can be proven at trial by introducing evidence that the dog's conduct satisfies the "dangerous dog" definition contained in R.C. 955.11(A)(1)(a), with no need for a prior formal designation under R.C. 955.222. In support of its position, the state cited *Crocker*, 2013-Ohio-3100, the conflict case on appeal. In *Crocker*, the Fifth District upheld a conviction under one of R.C. 955.22's dangerous-dog provisions without requiring proof of a prior dangerous-dog designation. Instead, the court held that the state was permitted to present evidence at trial to prove that the dog was dangerous as defined by R.C. 955.11(A)(1)(a). *Id.* at ¶ 31.

{¶ 8} The First District agreed with Jones. In reversing his conviction, the court held that a previous dangerous-dog designation "is a prerequisite to finding a violation of the R.C. 955.22(D)." 2018-Ohio-565, 95 N.E.3d 440, at ¶ 10. The court held that such a designation "is an element of the offense" and, as such, could not be satisfied by presenting evidence at trial that the dog was dangerous. *Id.* The appellate court's rationale was premised largely on due-process concerns pertaining to fairness and notice. In particular, the First District wrote that a prior designation is required because it serves to provide the owner with notice that he must confine his dangerous dog as required by R.C. 955.22(D). *Id.* In arriving at its conclusion, the First District relied on our decision in *State v. Cowan*, 103 Ohio St.3d 144,

4

2004-Ohio-4777, 814 N.E.2d 846, and the legislature's subsequent enactment of R.C. 955.222 and its notice and hearing requirements. *Id.*

{¶ 9} The state filed a motion to certify a conflict between districts, arguing that the underlying decision in this case conflicts with the Fifth District Court of Appeals' decision in *Crocker*. The First District granted the state's motion to certify a conflict. We recognized that a conflict exists and accepted the appeal, 153 Ohio St.3d 1428, 2018-Ohio-2418, 100 N.E.3d 445.

## II. ANALYSIS

### A. Statutory framework

{¶ 10} Notwithstanding the strong emotional bonds that often form between people and their dogs, dogs are considered personal property in Ohio and, as such, are subject to regulation pursuant to the state's police power. *Cowan* at ¶ 9. R.C. Chapter 955, aptly titled "Dogs," contains numerous laws on the ownership and treatment of dogs, which range from the details of licensing, selling, and impounding them to broader physical-control requirements. Additionally, the chapter defines specific legal terms, such as "nuisance dog," "dangerous dog," and "vicious dog," *see* R.C. 955.11, and outlines penalties for noncompliance with its laws, *see* R.C. 955.99.

{¶ 11} One of the sections at issue here, R.C. 955.22, dictates how an owner, keeper, or harborer of a dog must confine that dog if it is a dangerous dog, *see* division (D), and requires the owner, keeper, or harborer of a dangerous dog to obtain liability insurance if ordered by a court, *see* division (E). Additionally, R.C. 955.99(G) enhances the penalty for failing to confine or control one's dog if it is a dangerous dog. *See* R.C. 955.22(C) (establishing general requirements for confining and controlling "any dog," irrespective of whether that dog falls under one of the specific designations set forth in R.C. 955.11). R.C. 955.22 uses the same definition of "dangerous dog" as that contained in 955.11(A)(1)(a), which defines a "dangerous dog" as one that, without provocation, has done any of the

following: (1) caused a non-serious[1] injury to a person, (2) killed another dog, or (3) has been the subject of a third or subsequent violation of R.C. 955.22(C).[2]

**{¶ 12}** A separate section of R.C. Chapter 955, R.C. 955.222, provides a means by which a dog warden or other authorized official may designate a dog as "dangerous" when there is reasonable cause to believe that the dog meets the R.C. 955.11(A)(1)(a) definition. *See* R.C. 955.222(B) and (F). If a dog warden chooses to exercise his or her authority to designate a dog as dangerous, then the warden must notify the dog's owner, keeper, or harborer of both the designation and the option to request a judicial hearing to contest it. R.C. 955.222(A) and (B). At the hearing, the warden has the burden of proving the designation by clear and convincing evidence. R.C. 955.222(C).

**{¶ 13}** Here, the First District concluded that the dangerous-dog element of R.C. 955.22's dangerous-dog laws requires that the dog in question have been previously designated a dangerous dog. The Fifth District, on the other hand, allowed the state to introduce evidence other than a prior designation to prove dangerousness—in that case, witness testimony establishing that the dog in question killed another dog. *Crocker*, 2013-Ohio-3100, at ¶ 31-32. We conclude that a prior designation of dangerousness is not a requirement for proving the dangerous-dog element.

---

1. A dog that, without provocation, "has killed or caused *serious* injury to any person" is a "vicious" dog. (Emphasis added.) R.C. 955.11(A)(6)(a). *See also* R.C. 955.11(A)(5) (defining "serious injury").

2. R.C. 955.22(C) provides: "Except when a dog is lawfully engaged in hunting and accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of any dog shall fail at any time to do either of the following:

> (1) Keep the dog physically confined or restrained upon the premises of the owner, keeper, or harborer by a leash, tether, adequate fence, supervision, or secure enclosure to prevent escape;

> (2) Keep the dog under the reasonable control of some person."

## B. Our decision in *Cowan*

{¶ 14} The legislature's enactment of R.C. 955.222, *see* 2012 Sub.H.B. No. 14, followed this court's decision in *Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, in which we determined that the version of R.C. 955.22 then in effect, *see* Sub.H.B. No. 350, Section 1, 148 Ohio Laws, Part II, 3597, 3597-3599, violated procedural-due-process requirements because it allowed a dog warden to label dogs as dangerous or vicious without providing a mechanism for the dog owner to challenge the designation. In *Cowan*, Cowan's neighbor informed the dog warden that Cowan's dogs had attacked his (the neighbor's) wife. *Id*. at ¶ 1. The deputy warden conducted a brief investigation and determined that Cowan's dogs were vicious based on the neighbor's account of the attack.[3] *Id*. The deputy warden notified Cowan of the determination and also informed her that she must comply with R.C. 955.22's vicious-dog-confinement requirements. *Id*. After the deputy warden was summoned to Cowan's residence on two subsequent occasions in response to complaints that her dogs were not confined as required by R.C. 955.22's vicious-dog provisions, the warden filed charges against Cowan for two counts of failing to confine a vicious dog, at the time a violation of R.C. 955.22(D)(1), one count of failing to obtain the required liability insurance for a vicious dog, at the time a violation of R.C. 955.22(E), and one count of failing to restrain a dangerous dog, a violation of R.C. 955.22(D)(2)(b). *Id.* at ¶ 2-3. After she was convicted on all counts, Cowan appealed. *Id.* at ¶ 4-5. The Eleventh District Court of Appeals reversed Cowan's convictions, finding that R.C. 955.22 "unconstitutionally deprived [Cowan] of her due process rights" because she had no opportunity to contest the vicious-dog designations "prior to her property rights being

---

3. When we decided *Cowan* in 2004, the version of R.C. 955.22 in effect at that time contained several provisions that applied to vicious dogs in addition to dangerous dogs. Since then, R.C. 955.22 has been amended to remove any reference to "vicious dogs." 2012 Sub.H.B. No. 14. However, R.C. 955.222(E) states that vicious dogs are subject to the same control and confinement requirements as dangerous dogs under R.C. 955.22.

substantially and adversely affected." *Id*. at ¶ 5; *see also State v. Cowan*, 11th Dist. Portage Nos. 2002-P-0029, 2002-P-0030, 2002-P-0031, 2003-Ohio-3547, ¶ 23.

{¶ 15} In upholding the Eleventh District's decision in *Cowan*, we determined that the unilateral designation by a state actor, without any right to contest or appeal the designation, violated due process because it did not provide Cowan with "a right to be heard in a meaningful time and in a meaningful manner on the issue of whether her dogs were vicious or dangerous." *Id*. at ¶ 12-13. In doing so, we rejected the state's assertion that R.C. 955.22 afforded Cowan the right to challenge her dog's classification at her subsequent criminal trial and was thus constitutional. *Id*. at ¶ 12. Our determination on this point was due in large part to the fact that the state presented the deputy warden's unilateral designation as conclusive, essentially irrebuttable, proof to the jury that Cowan's dogs were in fact vicious. *Id.* at ¶ 14.[4] Cowan had no meaningful opportunity to contest the underlying designation at trial, and therein lay the constitutional problem. *Id.* at ¶ 14-15.

{¶ 16} In this case, the First District relied on our decision in *Cowan*, as well as the legislature's subsequent enactment of R.C. 955.222, to support its conclusion that Jones's dog must have been formally designated "dangerous" pursuant to R.C. 955.222 before Jones could be prosecuted. 2018-Ohio-565, 95 N.E.3d 440, at ¶ 10-11. Specifically, the court stated:

---

4. Additionally, this court raised concerns about how a delay in Cowan's ability to challenge the warden's unilateral designation of her dogs as vicious or dangerous might affect her due-process rights. Specifically, the court stated, "We find it inherently unfair that a dog owner must defy the statutory regulations and become a criminal defendant, thereby risking going to jail and losing her property, in order to challenge a dog warden's unilateral decision to classify her property. The statute does not provide appellee a right to be heard in a meaningful time and in a meaningful manner on the issue of whether her dogs were vicious or dangerous." *Cowan* at ¶ 13. We no longer have this concern. With the advent of R.C. 955.222, a dog warden may no longer make a unilateral determination that a dog is dangerous without first providing the owner, keeper, or harborer of the dog with notice of the designation and notice of that person's statutory right to contest the designation at a timely civil hearing.

> If the designation were not [a] prerequisite, Jones would not have been put on notice as to the statutory requirements for confining his dog, or had the opportunity to challenge the designation and consequent restriction on his property rights. Any other interpretation of R.C. 955.22(D) would render R.C. 955.11 superfluous and deprive dog owners of their statutory and constitutional rights to due process. The Ohio Supreme Court already said as much in [*Cowan*], when it struck down a former version of the "dangerous dog statute" for infringing upon the due process rights of dog owners for the same reason, leading to the enactment of R.C. 955.222.

*Id.* at ¶ 10. We find the First District's concerns about notice, and its reliance on *Cowan* and R.C. 955.222, to be misplaced.

### C. Due process does not require a prior designation

{¶ 17} To begin, we have acknowledged on many occasions that due process requires notice and fair warning of the conduct proscribed by a penal statute. *See generally Akron v. Rowland*, 67 Ohio St.3d 374, 381, 618 N.E.2d 138 (1993) ("Due process requires that the terms of a criminal statute be reasonably clear and definite * * * "). But we do not agree with the First District's statement that R.C. 955.22 requires a prior dangerous-dog designation for Jones to have been put on notice of the statutory requirements for confining his dog and his attendant criminal liability for failing to do so. R.C. 955.11(A)(1)(a) explicitly defines the term "dangerous dog" as one that "has done any of the following: (i) [c]aused injury, other than killing or serious injury, to any person; (ii) [k]illed another dog; [or] (iii) been the subject of a third or subsequent violation division (C) of section 955.22 * * * ." We determine that R.C. 955.11(A)(1)(a)'s use of the past tense,

"has done," when referring to the dog's conduct, means that only the dog's *prior* conduct can be used to define it as a dangerous dog. Accordingly, before a person has any legal obligation to confine or control his dog as described by R.C. 955.22's dangerous-dog laws, the dog in question must have first done something that qualifies it as a dangerous dog.

{¶ 18} The statutory language makes clear that the element of dangerousness contained in R.C. 955.22's dangerous-dog provisions cannot be met where the sole evidence of a dog's dangerousness is an act that took place contemporaneously with the failure-to-control-or-confine violation that is the subject of the prosecution. Because the dangerous-dog designation turns on the dog's past behavior, the statute provides fair warning to a dog owner that he or she may be subject to the dangerous-dog provisions of R.C. 955.22.

{¶ 19} Further, our decision in *Cowan* turned on whether a state agent could make a unilateral legal determination, accompanied by relatively burdensome obligations for the owner of the dog, without any procedural oversight. We held that this violated due process, but never concluded, as the appellate court suggests, that the government must have formally designated a dog as "dangerous" before alleging that a person has violated the pertinent parts of R.C. 955.22. *See* 2018-Ohio-565, 95 N.E.3d 440, at ¶ 13. It appears that R.C. 955.222 was adopted by the legislature in the years after *Cowan* as a means of providing a constitutionally sound way for a dog warden or other authorized official to designate dogs as dangerous prior to, and independent of, the criminal process. But neither our decision in *Cowan* nor the legislature's subsequent enactment of R.C. 955.222, which establishes a procedure for designating a dog as dangerous, requires that the government have previously designated a dog as dangerous before initiating a prosecution for a violation of R.C. 955.22's dangerous-dog laws. Rather, the state may, without a prior designation pursuant to R.C. 955.222 or otherwise, prosecute and prove the element of dangerousness at a trial for a violation of R.C. 955.22. If

the government can offer facts showing that a dog's conduct before the events giving rise to the charged offense meets the definition of "dangerous" that is contained in R.C. 955.11, then the element of dangerousness is satisfied; and of course, the owner, keeper, or harborer in such a situation can challenge the state's proof in the ordinary course of litigation.

### D. Statutory language does not require a prior designation

{¶ 20} Contrary to Jones's contention, nothing in R.C. Chapter 955 suggests that a dog must be formally designated as a dangerous dog before an owner, keeper, or harborer can be prosecuted for noncompliance with R.C. 955.22's dangerous-dog provisions. Had the legislature intended a prior designation to be a prerequisite to prosecution, it could have inserted this language into R.C. 955.222 or R.C. 955.11(A)(1)(a) or elsewhere. It did not. This is important because R.C. 955.11 and R.C. 955.22 were amended in 2012 in the same legislative act that enacted R.C. 955.222's notice and hearing process. *See* 2012 Sub.H.B. No. 14. The legislature was therefore able to insert a prior-designation requirement into the statutory scheme had it desired to do so.

### E. Sufficiency of the evidence

{¶ 21} Having determined that a prior dangerous-dog designation is not required in order to proceed with a prosecution under R.C. 955.22, and having determined that the prosecution may prove the dog's dangerousness at trial, we now consider whether the state met its burden of proof in this case.

{¶ 22} In order to prove that Jones's dog was a "dangerous dog" within the meaning of R.C. 955.22, the state had to present evidence that the dog, without provocation, had done any of the following: (1) caused a non-serious injury to another person, (2) killed another dog, or (3) been the subject of a third or subsequent violation of R.C. 955.22(C). *See* R.C. 955.11(A)(1)(a).

{¶ 23} At trial, the state introduced evidence of a Facebook post, allegedly written and posted by Jones, that contained pictures of his dog and several

comments underneath. One commenter stated, "I love how he walks thru crowds like no ones outside lol good temperament." Jones replied, "Yeah I had to train em to do that. He use to try n smell or bite everybody." Further, Jones testified that at the time of the incident his dog was in "protection training" classes, in which the dog learned, essentially, how to protect Jones from danger. According to Jones's testimony, the protection-training courses were intended to teach his dog how to attack and bite on command and "never let go."

{¶ 24} We conclude that the state failed to meet its burden of offering sufficient evidence to sustain a conviction for failure to control a dangerous dog. The facts related above do not establish beyond a reasonable doubt that, prior to biting Ms. Rushing, Jones's dog ever caused injury to a person, killed another dog, or was the subject of three or more violations under R.C. 955.22(C). *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

### III. CONCLUSION

{¶ 25} We answer the certified question by holding that a prior dangerous-dog designation is not required before a person may be prosecuted for failing to control or confine a dangerous dog. Here, however, the state failed to present sufficient evidence of prior acts of Jones's dog that would render him dangerous under R.C. 955.11(A)(1)(a). Accordingly, we maintain the First District's reversal of Jones's conviction, but for the reasons stated in this opinion.

Judgment affirmed.

O'CONNOR, C.J., and WAITE, DEWINE, and DONNELLY, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion joined by FRENCH, J.

CHERYL L. WAITE, J., of the Seventh District Court of Appeals, sitting for FISCHER, J.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 26} When interpreting a statute, we give plain and ordinary meaning to all the words and phrases in the statute, *State v. Singer*, 50 Ohio St.2d 103, 108, 362 N.E.2d 1216 (1977), and give effect to all parts of the statutory scheme, *United Tel. Co. of Ohio v. Limbach*, 71 Ohio St.3d 369, 372, 643 N.E.2d 1129 (1994). Because the majority's holding that a "prior dangerous-dog designation is not required before a person may be prosecuted for failing to control or confine a dangerous dog," majority opinion at ¶ 25, fails to give effect to the plain and unambiguous meaning of all the words chosen by the legislature and fails to give effect to all parts of the statutory scheme found in R.C. Chapter 955, I disagree with its reasoning. Contrary to the majority, I would answer the certified question in the affirmative: a "dangerous-dog" designation, pursuant to R.C. 955.222, is a prerequisite to prosecuting an individual for failing to confine or control the dog. I nevertheless concur in the court's judgment, as I would affirm the judgment of the First District Court of Appeals. Therefore, I concur in judgment only.

### Statutory Interpretation

{¶ 27} This case presents a narrow certified-conflict question whether a dog must have been previously designated a "dangerous dog" under R.C. Chapter 955 before its owner may be prosecuted for a crime pursuant to R.C. 955.22 for failing to confine or control the dog. The facts of the case are undisputed. *See* majority opinion at ¶ 17. To resolve the question presented, we begin at a familiar place, statutory construction.

{¶ 28} Our duty when construing a statute is to determine and give effect to the intent of the General Assembly as expressed in the language it enacted. *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, ¶ 18; *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20. "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v.*

*Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000).

{¶ 29} "Where a statute defines terms used therein, such definition controls in the application of the statute * * *." *Good Samaritan Hosp. of Dayton v. Porterfield*, 29 Ohio St.2d 25, 30, 278 N.E.2d 26 (1972), citing *Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 85 N.E.2d 379 (1949), and *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 267 N.E.2d 781 (1971). Terms that are undefined in a statute are accorded their common, everyday meaning. *See* R.C. 1.42.

{¶ 30} The crime that appellee, Joseph Jones, was convicted of—failing to confine a dangerous dog, in violation of R.C. 955.22(D)—is part of the broad statutory scheme in R.C. Chapter 955, covering, among other subjects, dog registration, kennel registration, the appointment of dog wardens, confinement and control of dogs, and assistance dogs. Therefore, our interpretation of the intent of the General Assembly in enacting R.C. 955.22(D) must consider, and cannot render meaningless, other parts of the statutory scheme. *Limbach*, 71 Ohio St.3d at 372, 643 N.E.2d 1129. We must, when construing this provision, give effect to the entire statutory scheme.

{¶ 31} R.C. 955.22(D)'s confinement and restraint requirements apply only to owners of dangerous dogs. The legislature defined "dangerous dog" in R.C. 955.11(A)(1) as

(a) * * * a dog that, without provocation * * * *has done* any of the following:

(i) Caused injury, other than killing or serious injury, to any person;

(ii) Killed another dog;

(iii) Been the subject of a third or subsequent violation of division (C) of section 955.22 of the Revised Code.

(Emphasis added.)

{¶ 32} The verb "has done" is present-perfect tense and indicates that the behavior by the dog must have previously occurred at some unspecified time. *See Robinson v. Ohio State Univ.*, 10th Dist. Franklin No. 81AP-517, 1982 WL 4144, *2 (Apr. 29, 2019). Therefore, it is only *after* the dog has first engaged in one of the behaviors set forth in R.C. 955.22(A)(1)(a)(i) through (iii) that the definition of "dangerous dog" can apply to that dog. *See State v. Smith*, 104 Ohio St.3d 106, 2004-Ohio-6238, 818 N.E.2d 283, ¶ 18 (the use of "has been convicted of or pleaded to" in the sexually-violent-predator specification "indicate[s] that at time of indictment, the person has already engaged in a sexually violent offense").

{¶ 33} But here, the majority holds that the dangerous-dog determination can occur simultaneously with the prosecution for failing to confine a dangerous dog in violation of R.C. 955.22(D) as long as the "government can offer facts showing that [the] dog's conduct before the events giving rise to the charged offense meets the definition of 'dangerous.' " Majority opinion at ¶ 19. If that is true, then why did the General Assembly provide a civil legal process in R.C. 955.222 by which a court may ultimately determine whether a dog is dangerous and that also affords the owner of that dog a right of appeal?

{¶ 34} The procedure by which a dog is designated a dangerous dog provides that if the dog warden or authorized official "has reasonable cause to believe a dog * * * is a * * * dangerous dog," the owner shall be notified of the fact that the warden or authorized person "has *designated the dog a * * * dangerous dog*." (Emphasis added.) R.C. 955.222(B)(1). If the owner disagrees with the

designation, he or she may then timely request a hearing, R.C. 955.222(B)(2), which shall be conducted by the municipal or county court with territorial jurisdiction over the owner, R.C. 955.222(A). At the hearing, the dog warden or authorized person "has the burden of proving, by clear and convincing evidence, that the dog is a * * * dangerous dog." R.C. 955.222(C). Thereafter, if a dog is designated a "dangerous dog," the owner has a right to appeal the court's determination. *Id.*

{¶ 35} The General Assembly did not define "designate" for purposes of R.C. 955.222. "Designate" has varying definitions. The most relevant are (1) "to distinguish as to class: denominate, identify, label" or (2) "to declare to be: characterize." *Webster's Third New International Dictionary* 612 (1986). Therefore, by its plain and unambiguous terms, R.C. 955.222 provides that a dog cannot be a dangerous dog until the process has been completed, either by the owner's failure to timely seek a hearing or by final judicial determination. It is only after a dog is designated a "dangerous dog" that the owner of the dog is put on notice that he or she is subject to the more stringent ownership and harboring requirements of R.C. 955.22(D) and that a violation of those requirements may subject the owner to criminal prosecution.

{¶ 36} The majority states that "nothing in R.C. Chapter 955 suggests that a dog must be formally designated as a dangerous dog" before its owner may be prosecuted for violating R.C. 955.22. Majority opinion at ¶ 20. However, this reading of the statute fails to give effect to the term "designate" as used in R.C. 955.222. As stated above, the common meaning of the word "designate" in this context is to declare that something meets a specific class—here, placing certain dogs into the class of "dangerous dogs." Our role is to evaluate a statute "as a whole and giv[e] such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the

court should avoid that construction which renders a provision meaningless or inoperative." *State ex rel. Myers v. Spencer Twp. Rural School Dist. Bd. of Edn.*, 95 Ohio St. 367, 373, 116 N.E. 516 (1917). Statutes " 'may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act.' " *Weaver v. Edwin Shaw Hosp.*, 104 Ohio St.3d 390, 2004-Ohio-6549, 819 N.E.2d 1079, ¶ 13, quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 78 N.E.2d 370 (1948), paragraph five of the syllabus. Here, however, the majority's determination does not give effect to every word and clause in the statutory scheme.

{¶ 37} Moreover, it appears that the majority has not thoroughly analyzed R.C. 955.222 and, therefore, has failed to consider the impact of its holding on that provision. If, as the majority contends, it is the dog's past *behavior* that puts an owner on notice of being subject to R.C. 955.22, majority opinion at ¶ 18, why would the General Assembly have enacted R.C. 955.222(D), which requires that a dog be confined or restrained pursuant to R.C. 955.22(D) until a court makes a final dangerous-dog determination and during the appellate process. However, in this case, under the majority's holding, R.C. 955.222(D) is meaningless, as it would be unnecessary to notify an owner of the duty to comply with R.C. 955.22(D) during the R.C. 955.222 process since he should have started complying immediately after the dog engaged in the behavior.

{¶ 38} The effect of the majority's holding also results in an inconsistent application of other dangerous-dog requirements. Specifically, the owner of a dangerous dog is required to obtain a registration certificate and place a tag on the dog's collar that identifies the dog as a dangerous dog, R.C. 955.22(E)(2); notify the dog warden if the dog is loose or unconfined, bites a person, or attacks another animal while off the owner's property, R.C. 955.22(E)(3)(a) through (c); and notify

the county auditor within ten days if the dog is sold, given to another person, or dies, R.C. 955.22(E)(4).

{¶ 39} However, another part of R.C. 955.222(D) provides that an owner "shall not be required to comply with any other requirements established in the Revised Code that concern a * * * dangerous dog * * * until the court makes a final determination and during the pendency of any appeal." Nevertheless, the consequence of the majority's holding is that an owner whose dog has engaged in the behavior set forth in R.C. 955.11(A), but has not been subject to the R.C. 955.222 designation process, must comply with the "other requirements" notwithstanding the General Assembly's express intent that compliance with those requirements *shall not* be required until there is a final judicial determination.

{¶ 40} Because I find that giving effect to every word and phrase requires a prior designation that a dog is a dangerous dog before an owner can be charged with a crime for failing to control or confine a dangerous dog, I would answer the certified conflict question in the affirmative and thus I disagree with the majority's reasoning. Nevertheless, because the majority affirms the appellate court on other grounds, I concur in judgment only.

FRENCH, J., concurs in the foregoing opinion.

_____

Paula Boggs-Muething, Cincinnati City Solicitor, Natalia S. Harris, Cincinnati City Prosecutor, and Christopher Liu, Senior Assistant Prosecutor, for appellant.

Raymond T. Faller, Hamilton County Public Defender, and David Hoffmann Assistant Public Defender, for appellee.

_____