[Cite as *State v. Shelor*, 2022-Ohio-2613.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                      Court of Appeals No.  F-21-011

          Appellee                                 Trial Court No.  20CR103

v.

Alan Shelor                                        **DECISION AND JUDGMENT**

          Appellant                                Decided:  July 29, 2022

* * * * *

Scott Haselman, Fulton County Prosecuting Attorney, for appellee.

Adam H. Houser, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Defendant-appellant Alan M. Shelor, appeals the April 16, 2021 judgment of

the Fulton County Court of Common Pleas, convicting him of various theft offenses and

engaging in a pattern of corrupt activity, and sentencing him to a minimum prison term of

70 months and a maximum prison term of 88 months.  For the following reasons, we

affirm the trial court judgment.

## I.    Background

{¶ 2} Alan Shelor was charged in a 22-count indictment with 13 counts of breaking and entering (Counts 1, 3-4, 6-8, 12, 14, 16, 18-21), two counts of grand theft (Counts 5 and 10), three counts of grand theft of a motor vehicle (Counts 2, 9, and 17), two counts of theft (Counts 11 and 13), one count of theft from a person in a protected class (Count 15), and one count of engaging in a pattern of corrupt activity (Count 22). Shelor and the state reached an agreement under which Shelor would enter a plea of guilty to certain counts and other counts would be dismissed.  In a judgment journalized on April 16, 2021, he was convicted of the following counts and was sentenced as follows:

| Count | Offense | Statute | Degree | Sentence | Consecutive or Concurrent |
|---|---|---|---|---|---|
| 1 | Breaking and entering | R.C. 2911.13(A) | F-5 | 9 months definite | Concurrent with Count 22 and with remaining counts |
| 5 | Grand theft | R.C. 2913.02(A)(1) | F-3 | 12 months definite | Consecutive to Counts 9, 15, and 22 |
| 9 | Grand theft of a motor vehicle | R.C. 2913.02(A)(1) | F-4 | 12 months definite | Consecutive to Counts 5, 15, and 22 |
| 13 | Theft | R.C. 2913.02(A)(1) | F-5 | 10 months definite | Concurrent with count 1 and with remaining counts |
| 15 | Theft from a person in a protected class | R.C. 2913.02(A)(1) | F-5 | 10 months definite | Consecutive to Counts 5, 9, and 22 |
| 22 | Engaging in a pattern of | R.C. 2923.32(A)(1) | F-1 | Indefinite term of 3 years | Consecutive with Counts 5, 9, and 15 |

2.

| | corrupt activity | | | minimum and 4.5 years maximum | |
|---|---|---|---|---|---|

In total, Shelor was sentenced to a minimum prison term of 5.83 years and a maximum term of 7.33 years. He was also ordered to make restitution to victims totaling $5,522.

{¶ 3} Shelor appealed. He assigns the following errors for our review:

1. THE TRIAL COURT FAILED TO FOLLOW THE PRINCIPAL [sic] AND PURPOSE OF OHIO LAW WHEN IT SENTENCED DEFENDANT TO CONSECUTIVE SENTENCES.

2. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT SENTENCE[D] APPELLANT'S [sic] PURSUANT TO SENATE BILL 201 ("S.B. 201") AND O.R.C. 2929.144 VIOLATES THE CONSTITUTIONAL DOCTRINE OF THE SEPARATION OF POWERS[.]

3. THE TRIAL COURT COMMITTED PLAIN ERROR BECAUSE THE JUDGMENT VIOLATES THE APPELLANT'S DUE PROCESS RIGHTS PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AS IT RELATES TO THE INDEFINITE SENTENCE.

4. APPELLANT RECEIVED INEFFECTIVE ASSITANCE [sic] OF COUNSEL WHEN COUNSEL FAILED TO OBJECT TO

APPELLANT BEIGN [sic] SENTENCED BY AN

UNCONSTITUTIONAL STATUTE OF THE INDEFINITE SENTENCE.

## II.    Law and Analysis

{¶ 4} In his assignments of error, Shelor challenges the length of his sentence, the constitutionality of the sentencing scheme under which he was sentenced on Count 22, and trial counsel's failure to challenge the constitutionality of the sentencing scheme.  We begin by addressing Shelor's challenge to his sentence, then we move to his remaining assignments of error.

## A. Shelor's Sentence

{¶ 5} In his first assignment of error, Shelor argues that the trial court did not properly evaluate R.C. 2929.11, 2929.12, and 2929.14(C)(4) in imposing his sentence.  He claims that the trial court did not properly consider recidivism factors (including his age, drug addiction, lack of criminal history, and remorse) and incorrectly found that he committed the offenses while awaiting trial or sentencing or was under postrelease control.  He claims that the trial court's decision "was clearly against the manifest weight of the evidence."

{¶ 6} We do not review a challenge to a felony sentence under a manifest-weight standard.  Rather, we review a challenge to a felony sentence under R.C. 2953.08(G)(2). R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, or otherwise

modify a sentence or may vacate the sentence and remand the matter to the sentencing court for resentencing if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

{¶ 7} Shelor's challenge to his sentence implicates both R.C. 2953.08(G)(2)(a) and (b).

{¶ 8} With respect to R.C. 2953.08(G)(2)(a), under R.C. 2929.14(C)(4), a trial court may order an offender to serve consecutive sentences for multiple offenses if it finds that "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and if it also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

5.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 9} In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus, the Ohio Supreme Court recognized that "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." It emphasized, however, that "a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 10} At the sentencing hearing, the trial court found that Shelor "committed one or more of the multiple offenses while awaiting trial or sentencing or was under a sanction imposed under [R.C.] 2929.16, 17, or 18 * * * or was under postrelease control for a prior offense." It also found that "[a]t least two of the multiple offenses were

committed as a part of one or more courses of conduct then [sic] the harm caused by two or more of the multiple offenses so committed was so greater [sic] unusual that no single prison term for any these [sic] offenses committed as a part of courses of conduct adequately reflect the seriousness of the defendant's conduct and this course of conduct clearly reflects that the public has the need to be protected from future crime by this offender."

{¶ 11} In its judgment entry, the trial court found that "consecutive service is necessary to protect the public from future crime or to punish Defendant," "consecutive sentences are not disproportionate to the seriousness of Defendant's conduct and to the danger Defendant poses to the public," "the harm caused by Defendant was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct," and "Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime."

{¶ 12} We can discern from the transcript of the sentencing hearing and from the judgment entry that the trial court found that consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. As to the findings under R.C. 2929.14(C)(4)(a), (b), or (c),

7.

it appears that at sentencing, the trial court found both R.C. 2929.14(C)(4)(a) and (b), whereas in its judgment entry, the trial court found both R.C. 2929.14(C)(4)(b) and (c).

{¶ 13} Shelor maintains that he was not awaiting trial or sentencing, was not under community control, and was not under postrelease control at the time he committed the offenses. He further insists that he had no other criminal convictions. From our review of the record, this appears to be true. However, Shelor does not deny that "at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." In fact, at sentencing, the trial court commented that Shelor had gone on a crime spree. This is supported by the record, which indicates that over several days in late July to early August, 2020, Shelor and others committed theft offenses across Fulton County. In other words, at least two of the offenses were committed as part of a course of conduct. Because the court's finding under R.C. 2929.14(C)(4)(b) is supported by the record, we cannot say that the trial court erred in imposing consecutive sentences.

{¶ 14} Turning to Shelor's claim that the trial court did not properly consider recidivism factors, we must construe this argument under R.C. 2953.08(G)(2)(b). Under this provision, we may modify or vacate a sentence if we find clearly and convincingly that the sentence is otherwise contrary to law.

8.

{¶ 15} In *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio- 425, ¶ 15, we recognized that a sentence is not clearly and convincingly contrary to law for purposes of R.C. 2953.08(G)(2)(b) where the trial court has considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12, properly applied post-release control, and sentenced the defendant within the statutorily-permissible range.

{¶ 16} The Ohio Supreme Court has made clear that "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649. In fact, the trial court's consideration of the factors set forth in R.C. 2929.11 and R.C. 2929.12 is presumed even on a silent record. *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1 (2017); *State v. Cyrus,* 63 Ohio St.3d 164, 166, 586 N.E.2d 94 (1992). An appellate court may not independently weigh the evidence and substitute its judgment for that of the trial court regarding the appropriate sentence under R.C. 2929.11 and 2929.12, nor may it modify or vacate a sentence under R.C. 2953.08(G)(2)(b) based on the lack of support in the record for the trial court's findings under those statutes. *Jones* at ¶ 39, 41-42.

{¶ 17} Here, the trial court specifically stated that it considered the purposes and principles of sentencing in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12. Under *Jones,* we are precluded from reviewing Shelor's sentence because his sole contention is that the trial court improperly considered the factors

9.

of R.C. 2929.11 or 2929.12 when fashioning that sentence. *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2021-Ohio-2256, ¶ 9, *rev'd on other grounds, In re Cases Held for the Decision in State v. Maddox*, Slip Opinion No. 2022-Ohio-1352.

{¶ 18} Accordingly, we find Shelor's first assignment of error not well-taken.

## B. The Reagan Tokes Law

{¶ 19} Senate Bill 201—the Reagan Tokes Law—became effective on March 22, 2019. The Law "significantly altered the sentencing structure for many of Ohio's most serious felonies" by implementing an indefinite sentencing system for non-life, first and second-degree felonies committed on or after its effective date. *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, 2020 WL 3032862, ¶ 5, fn. 1. The Law specifies that the indefinite prison terms will consist of a minimum term, selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A), and a maximum term determined by formulas set forth in R.C. 2929.144. The Law establishes a presumptive release date from prison at the end of the minimum term, but the Ohio Department of Rehabilitation and Correction ("ODRC") may rebut the presumption if it determines, after a hearing, that one or more factors apply, including that the offender's conduct while incarcerated demonstrates that he continues to pose a threat to society. R.C. 2967.271(B), (C)(1), (2) and (3). If ODRC rebuts the presumption, it may maintain the offender's incarceration for a reasonable, additional period of time,

determined by ODRC, but not to exceed the offender's maximum prison term. R.C. 2967.271(D).

{¶ 20} In his second and third assignments of error, Shelor argues that the Reagan Tokes Law violates the constitutional doctrine of separation of powers and deprives him of due process. Shelor failed to challenge the constitutionality of this sentencing scheme in the trial court, therefore, he concedes that we must consider his second and third assignments of error under a plain-error standard of review.

{¶ 21} Plain error is error that affects substantial rights. Crim.R. 52(B). In determining whether plain error occurred, we must examine the alleged error in light of all of the evidence properly admitted at trial. *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Id.,* citing *Long* at paragraph two of the syllabus.

{¶ 22} We first address Shelor's claim that this sentencing scheme violates the constitutional doctrine of separation of powers. We then consider his claim that it violates his due-process rights.

11.

## 1. Separation of Powers

{¶ 23} Shelor argues that under the Reagan Tokes Law, ODRC is permitted to impose an additional sentence on an offender based on rule infractions or violations of the law committed while in custody. He complains that ODRC's Rules Infraction Board ("RIB") is responsible for hearing and determining whether an infraction or violation has occurred, therefore, it acts as judge, prosecutor, and jury. Shelor insists that this scheme divests the authority of the judicial branch to sentence offenders, instead conferring authority on the executive branch in violation of the separation-of-powers doctrine. Shelor compares this aspect of the Reagan Tokes Law to Ohio's former "bad time" statute, which was found to be unconstitutional in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000).

{¶ 24} The state responds that the Reagan Tokes Law represents "a permissible 'three-way sharing' of sentencing authority, with judges deciding the length of sentences within the legislatively-determined ranges, and parole officers in the executive branch determining the actual duration of imprisonment." It denies that ODRC is able to "lengthen" the prison sentence beyond the maximum sentence imposed by the trial court and compares the authority to require an offender to remain in prison beyond the minimum term to a decision to grant or deny parole.

{¶ 25} We recently considered whether the Reagan Tokes Law violates the constitutional doctrine of separation of powers in *State v. Gifford*, 6th Dist. Lucas No. L-

12.

21-1201, 2022-Ohio-1620. As we explained in *Gifford,* "the doctrine of separation of powers is 'implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government.'" *Bray* at 134, quoting *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-159, 503 N.E.2d 136 (1986). "The legislative has the sole right and power to enact laws, the judiciary to declare their meaning and application, and the executive to enforce their execution." *Chesnut v. Shane's Lessee,* 16 Ohio 599, 621 (1847). "'The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments, and further that none of them ought to possess directly or indirectly an overruling influence over the others.'" *Bray,* quoting *State ex rel. Bryant v. Akron Metro. Park Dist.*, 120 Ohio St. 464, 473, 166 N.E. 407 (1929).

{¶ 26} In connection with its role in declaring the "meaning and application" of laws, the judiciary is solely responsible for determining guilt and sentencing a defendant who has been convicted of a crime. *Id.* at 136. Like the defendant in *Gifford,* Shelor argues that because R.C. 2967.271 permits ODRC to rebut the presumption that an offender will be released after serving his or her minimum sentence for crimes allegedly committed while in prison (and presented to the executive branch), the statute deprives

13.

the judiciary of its exclusive authority and instead authorizes ODRC to extend a criminal defendant's sentence, thereby acting as judge, prosecutor, and jury. We disagree.

{¶ 27} Under the Reagan Tokes Law, it is the trial court that imposes both a minimum and maximum sentence. R.C. 2929.14 and 2929.144. As we emphasized in *Gifford,* while R.C. 2967.271(C) and (D) permit ODRC to "maintain" an offender's incarceration for additional, reasonable periods for certain misconduct committed during incarcerations, ODRC is *not* permitted to "impose" a sentence or "extend" a sentence beyond the maximum sentence imposed by the trial court. In this way, the Law is different than other legislation struck down by the Ohio Supreme Court as violating separation of powers, such as former R.C. 2967.11, which governed "bad time" and allowed ODRC to extend an offender's prison term beyond the original sentence imposed by the court for misconduct committed during incarceration. Here, any additional period of incarceration "shall not exceed the offender's maximum prison term." R.C. 2967.271(D). In this way, the authority granted to ODRC under the Reagan Tokes Law is more comparable to the authority granted to the parole board under the postrelease control statute, R.C. 2967.28, which the Ohio Supreme Court upheld in *Woods v. Telb*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (2000).

{¶ 28} As we summarized in *Gifford,* the Ohio Supreme Court in *Woods* recounted the evolution of Ohio's sentencing statutes up to that point. It explained that Ohio enacted truth-in-sentencing laws, Senate Bill 2, to ensure that sentences imposed by

14.

trial judges were the sentences served, unless altered by the judge. "This was primarily accomplished by two methods: eliminating indefinite sentences and eliminating parole." *Id.* at 508. The court described that before S.B. 2, offenders rarely served the time to which they were actually sentenced because (1) indefinite sentences were prescribed for most serious felonies, (2) upon entering a correctional institution, an offender's sentence was automatically reduced by 30 percent for good behavior, and (3) the Ohio parole board "reviewed all prison sentences for disparity among offenders and attempted to abate inequities." *Id.* at 508. Under S.B. 2, offenders were sentenced to definite sentences, good time was significantly reduced and had to be earned, and the Parole Board no longer had authority to determine how long an offender stayed in prison.

{¶ 29} The Ohio Supreme Court explained that before S.B. 2, offenders were subject to parole if they were convicted of first- or second-degree felonies or third- or fourth-degree felonies that involved an act of violence, or if they had been previously been convicted of a crime of violence. Instead of parole, S.B. 2 introduced "post-release control." Similar to parole, a period of postrelease control is required for all offenders imprisoned "for first- or second-degree felonies, felony sex offenses, or a third-degree felony, not a felony sex offense, in which the offender caused or threatened to cause physical harm to a person." *Id.*, citing R.C. 2967.28(B). Post-release control may also be required at the discretion of the Parole Board for offenders imprisoned for other felonies. *Id.,* citing R.C. 2967.28(C).

15.

{¶ 30} The Ohio Supreme Court recognized that R.C. 2967.28 permits the parole board significant discretion to impose conditions of release "designed to protect the public and to promote the releasee's successful reintegration into the community." *Id.*, citing Ohio Adm.Code 5120:1–1–17(A). R.C. 2967.28(D) sets forth factors for the APA to consider in determining whether to impose postrelease control and what conditions to impose. It even permits the board to impose residential sanctions including a prison term.

{¶ 31} Ultimately, the Ohio Supreme Court reversed the decision of this court – which found that the postrelease control statute violated the separation of powers doctrine because the delegation of powers to the Adult Parole Authority usurped judicial authority—after it concluded that the delegation of power to the APA is no different for postrelease control than it was under the former system of parole. It compared the two systems.

{¶ 32} Under the parole system, a sentencing court imposed an indefinite sentence with the possibility of parole. It could control the maximum length of the prison sentence, but had no power over when parole might be granted or what conditions of parole would be imposed. Similarly, under postrelease control, the sentencing court imposes a sentence from the options available under the sentencing scheme, informs the offender that he or she may be subject to a period of postrelease control, and advises him or her that a violation of the conditions of postrelease control will result in additional time up to 50 percent of the original sentence.

16.

{¶ 33} In *Woods,* the defendant argued that the postrelease control statute was similar to the bad time statute that was found unconstitutional in *Bray.* But the Ohio Supreme Court found that unlike bad time—where a crime committed while incarcerated resulted in an additional sentence not imposed by the court—the imposition of postrelease control is part of the judicially-imposed sentence. Also, it explained, postrelease control sanctions are aimed at behavior modification to facilitate reintegration into the community rather than mere punishment for an additional crime, as was the case with the bad-time statute. The court acknowledged that the sentencing judge has no control over how much time an offender may serve on postrelease control, but it observed that this was also true for parole. It noted that "for as long as parole has existed in Ohio, the executive branch * * * has had absolute discretion over that portion of an offender's sentence." *Id.* at 512, citing *State ex rel. Atty. Gen. v. Peters*, 43 Ohio St. 629, 4 N.E. 81 (1885). It concluded that "the APA's discretion in managing post-release control does not impede the function of the judicial branch," therefore, the statute did not violate the separation of powers doctrine. *Id.*

{¶ 34} As we recognized in *Gifford,* 6th Dist. Lucas No. L-21-1201, 2022-Ohio-1620, since *Woods*, a unanimous decision of the Ohio Supreme Court reaffirmed the holding and reasoning in that case, recognizing that a trial court's imposition of postrelease-control in its original sentence "avoids any potential separation-of-powers

problem." *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 19, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19.

{¶ 35} Moreover, it is important to note that *Woods* was not the first time that the Ohio Supreme Court recognized the role of the executive branch in determining the circumstances under which a properly-sentenced offender should be released from prison. In *McDougle v. Maxwell*, 1 Ohio St.2d 68, 71, 203 N.E.2d 334, 337 (1964), the Ohio Supreme Court recognized that "[t]he granting of parole and the final release of prisoners is the function of the Pardon and Parole Commission * * * as is the supervision of those on parole * * *. It emphasized that "[w]hether a prisoner should be released before he has served his maximum sentence is an administrative not a judicial matter." *Id.*

{¶ 36} Here, there are strong similarities between the authority of the judicial and executive branches under the Reagan Tokes Law and their authority under the systems of parole and postrelease control that the Ohio Supreme Court upheld in *Woods* and supported in *McDougle*. Under the Reagan Tokes Law, the *trial court* imposes a minimum sentence and a maximum sentence. While ODRC may rebut the presumption that an offender will be released after service of his or her minimum sentence (or on the presumptive earned early release date) if it demonstrates any of the circumstances enumerated in R.C. 2967.271(C), under no circumstances may it maintain an offender's incarceration beyond the maximum term imposed by the sentencing court. As such, the

18.

executive agency does not impede the function of the judicial branch, and the constitutional doctrine of separation of powers is not violated. *See Gifford* at ¶ 36.

{¶ 37} Accordingly, we find that the Reagan Tokes Law does not violate the constitutional doctrine of separation of powers, and we find Shelor's second assignment of error not well-taken.

2.    *Due Process*

{¶ 38} Shelor also argues that the presumption of release upon expiration of the minimum sentence creates an expectation of freedom, thereby invoking due-process protections. He claims that the Reagan Tokes Law violates due process because an administrative body—not a neutral judge or magistrate—is permitted to restrict an offender's freedom; there is an overly broad category of rules violations that can subject the offender to additional time, leaving reasonable opportunity for error and allowing the parole board unfettered discretion; the Law fails to provide guidelines for weighing consideration of the offender's disciplinary history; offenders are not provided adequate notice and the ability to be heard in a meaningful time and manner; and offenders are not afforded a right to counsel for these hearings.

{¶ 39} The state responds that ODRC does not have unfettered control to require an offender to serve more than a minimum term; under the Law the offender must be provided notice and an opportunity to be heard before he or she may be required to serve

19.

more than the minimum term; and the Law does not permit ODRC to keep the offender in prison beyond the maximum term imposed by the trial court.

{¶ 40} As we recently recognized in *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2022-Ohio-2072, the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 16 of the Ohio Constitution guarantee procedural due process. "The Due Process Clause applies when government action deprives a person of liberty or property[.]" *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). If due process applies, the question becomes what process is due. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* At a minimum, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8, citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

{¶ 41} In *Stenson,* we concluded that because the Reagan Tokes Law creates a presumption of release after service of an offender's minimum sentence, it creates a liberty interest implicating due process rights. *See Stenson* at ¶ 25, citing *Greenholtz* at 12; *See also Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (finding that inmates had liberty interest in state-created right to good-time credit, the extinguishment of which entitled them to due process to insure that the right "is not

20.

arbitrarily abrogated"). Having concluded that a liberty interest exists, we proceeded in *Stenson* to determine what process is due under the circumstances.

{¶ 42} We recognized in *Stenson* that courts that have considered what process is due under the additional-term provisions of the Reagan Tokes Law often draw analogies between the Law and either (1) probation or parole *release* decisions, or (2) probation or parole *revocation* decisions. We acknowledged that neither release nor revocation decisions afford a defendant the "full panoply of rights due" in a criminal prosecution, however, the U.S. Supreme Court has determined that the latter requires greater procedural safeguards than the former. *Stenson* at ¶ 26, quoting *Morrissey* at 480; *Greenholtz,* at 10.

{¶ 43} As we observed in *Stenson,* the Court concluded in *Morrissey*, where parole *revocation* was at issue, that due process required "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey* at 489. It concluded in *Greenholtz*, where parole *release* was at issue, that due process was afforded where an offender was

21.

given an opportunity to be heard, and in the case of denial of parole, information was provided concerning in what respects the offender fell short of qualifying for parole. *Id.* at 16.

{¶ 44} The U.S. Supreme Court explained in *Greenholtz* its rationale for differentiating between release and revocation decisions. In a parole revocation decision, the Court explained, an offender is threatened with the deprivation of the liberty he *has*; in a parole release decision, the offender merely *desires* liberty. The U.S. Supreme Court recognized that parole-revocation determinations actually require two decisions: "whether the parolee in fact acted in violation of one or more conditions of parole and whether the parolee should be recommitted either for his or society's benefit." *Id.* at 9. It emphasized that the first step in a parole revocation decision "involves a wholly retrospective factual question." *Id.* at 9. Parole release decisions, on the other hand, are "more subtle and depend[] on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release." (Internal citations and quotations omitted.) *Id.* at 9-10. "Unlike the revocation decision," when the board reviews a parole eligibility decision, "there is no set of facts which, if shown, mandate a decision favorable to the individual." *Id.* at 10. To the contrary, the parole release decision is "subjective" and "predictive," and the statute "vests very broad discretion" in the parole board. *Id.* at 13.

22.

**{¶ 45}** We noted in *Stenson* that the Reagan Tokes Law creates a presumption that an offender will be released after service of his or her minimum sentence. But we also observed that it does not provide for a "purely subjective appraisal" whether release is advisable after service of the minimum sentence. Rather, under R.C. 2967.271(B) and (C), an Ohio offender *must* be released after service of the minimum sentence unless ODRC makes the purely factual finding that (1) the offender is a security level three or higher at the time of the hearing, or (2) the offender was placed in extended restrictive housing within the year preceding the hearing—classifications and decisions made pursuant to ODRC's own detailed sets of policies and procedures—*or* (3) during his incarceration, the offender committed rule violations that involved compromising the security of the institution, compromising the safety of the staff or inmates, or physical harm or the threat of physical harm to the staff or, or committed a violation of law that was not prosecuted, and the infractions show that the offender has not been rehabilitated, *and* the offender's behavior while incarcerated demonstrates that he or she continues to pose a threat to society.

**{¶ 46}** As we emphasized in *Stenson*, in this way, the Reagan Tokes Law functions unlike the merely discretionary decision to release an offender on parole and more like a parole revocation decision. It requires two determinations under R.C. 2967.271(C)(1): (1) did the offender, during his incarceration, commit certain rule violations or unprosecuted crimes?—"wholly retrospective factual question[s]"; and (2)

23.

does this behavior demonstrate that the offender still poses a threat to society?  *Id.* at 8.

For these reasons, we concluded in *Stenson* that the liberty interest at stake under the Reagan Tokes Law is more akin to the liberty interest at stake in a parole revocation decision rather than a parole release decision.  *Id.* at ¶ 30.

{¶ 47} Because the Reagan Tokes Law creates a liberty interest more akin to probation revocation decisions, we found in *Stenson* that this means that the type of process due in *Morrissey* is due under the additional-term provisions of the Law.  Here, however—as in *Stenson*—ODRC has not sought to extend Shelor's term beyond the presumptive minimum sentence.  Shelor's challenge to the Reagan Tokes Law is necessarily a facial challenge.  "To prevail on a facial constitutional challenge, the challenger must prove the constitutional defect, using the highest standard of proof, which is also used in criminal cases, proof beyond a reasonable doubt."  *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, ¶ 21, citing *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus.  "A facial challenge to a legislative act is the most difficult to mount successfully, since the challenger must establish that no set of circumstances exists under which the act would be valid."  *State v. Coleman*, 124 Ohio App.3d 78, 80, 705 N.E.2d 419 (10th Dist.1997), citing *United States v. Salerno*, 481 U.S. 739, 749, 107 S.Ct. 2095, 95 L.Ed.2d 69 (1987).  "The fact that a statute might operate unconstitutionally under some plausible set of circumstances is

24.

insufficient to render it wholly invalid." *Harrold v. Collier,* 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37, citing *id.*

{¶ 48} As we observed in *Stenson,* in considering the process due a parolee whose parole is being revoked, the U.S. Supreme Court in *Morrissey*, 408 U.S. at 488, 92 S.Ct. 2593, 33 L.Ed.2d 484, acknowledged that most states have enacted legislation setting forth procedural requirements for parole revocation hearings, but others have done so by judicial decision. Although the legislation in the present case does not involve parole revocation, *Morrissey* is instructive because it necessarily implies that the specific procedural requirements applicable to protect a particular liberty interest need not be set forth in the legislation itself. In other words, *Morrissey* suggests that the Reagan Tokes Law may not be found to be unconstitutional, on its face, as violating due process merely because the specific procedures for invoking an additional period of incarceration are not set forth in the Law itself.

{¶ 49} Here, the Reagan Tokes Law states simply that ODRC may rebut the presumption of release at a "hearing." R.C. 2967.271(C) and (D). It provides no details concerning the type or timing of notice that must be provided to the offender, the procedures for the hearing (including pre-hearing disclosure of evidence, the type of evidence and witnesses that may be presented, or the offender's right to confront and cross-examine adverse witnesses), or the manner in which the offender must be apprised of ODRC's decision. But given that this is a facial challenge to the Law, it cannot be said

25.

at this juncture that the Law "cannot be applied constitutionally in any circumstances." As we commented in *Stenson*, should the Law ultimately be applied in a manner that is unconstitutional, an offender would not be precluded from challenging the Law as applied. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 230, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) ("If an inmate were to demonstrate that the New Policy did not in practice operate in [a constitutionally-permissible] fashion, resulting in a cognizable injury, that could be the subject of an appropriate future challenge.").

{¶ 50} Accordingly, consistent with *Stenson*, we find that the Reagan Tokes Law does not, on its face, violate the constitutional right to due process, and we find Shelor's third assignment of error not well-taken.

## C. Ineffective Assistance of Counsel

{¶ 51} In his fourth assignment of error, Shelor argues that trial counsel was ineffective for failing to object to his sentence being imposed under an unconstitutional sentencing scheme. The state responds that trial counsel was not ineffective for failing to object because all statutes are presumed constitutional, the sentence was rendered before any court had found the Law unconstitutional, the sentence was rendered after this court found the issue not ripe for review, and at the time the sentence was rendered, multiple courts had found the Law constitutional.

{¶ 52} In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the

26.

adversarial process that the trial court cannot be relied on as having produced a just result. *State v. Shuttlesworth*, 104 Ohio App.3d 281, 287, 661 N.E.2d 817 (7th Dist.1995). To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 53} Given our conclusion that Shelor has failed to demonstrate that the Reagan Tokes Law is unconstitutional, we find that counsel was not ineffective for failing to object to Shelor being sentenced under the Law. We find his fourth assignment of error not well-taken.

### III. Conclusion

{¶ 54} Because the court's finding under R.C. 2929.14(C)(4)(b) is supported by the record, we cannot say that the trial court erred in imposing consecutive sentences. Moreover, we cannot independently weigh the evidence and substitute our judgment for that of the trial court regarding the appropriate sentence under R.C. 2929.11 and 2929.12. We, therefore, find Shelor's first assignment of error not well-taken.

27.

**{¶ 55}** We reject Shelor's challenges to the constitutionality of the Reagan Tokes Law.  We conclude that the Law does not violate the separation-of-powers doctrine and does not, on its face, deprive offenders of their right to due process.  We, therefore, find Shelor's second and third assignments of error not well-taken.

**{¶ 56}** Given our conclusion that the Reagan Tokes Law is not unconstitutional on its face, trial counsel was not ineffective for failing to object to Shelor being sentenced under the Law.  We, therefore, find Shelor's fourth assignment of error not well-taken.

**{¶ 57}** We affirm the April 16, 2021 judgment of the Fulton County Court of Common Pleas.  Shelor is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

_____
JUDGE

Myron C. Duhart, P.J. _____

_____
JUDGE

Gene A. Zmuda, J. _____

_____
CONCURS AND WRITES                         JUDGE
SEPARATELY.

**ZMUDA, J.**

{¶ 58} I agree with the majority's disposition of each of Shelor's assignments of error. I write separately, because I find that the Reagan Tokes Law does not facially violate a defendant's constitutional right to due process, and thus Shelor's third assignment of error is not well-taken, based upon the reasoning I articulated in this court's lead opinion in *State v. Eaton*, 6th Dist. Lucas No. L-21-1121. I disagree with the majority's determination that the Reagan Tokes Law creates a liberty interest akin to probation revocation, but this disagreement does not yield a different conclusion on the ultimate question of constitutionality in this case. Therefore, I concur.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

29.